# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-800

**RANDY STANFORD, et al.**

**VERSUS**

**TOWN OF BALL, et al.**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 178,690
HONORABLE GEORGE C. METOYER JR., DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT
JUDGE**

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr.,[1] Judges.

**AFFIRMED.**

**Henry H. Lemoine Jr.
Attorney at Law
607 Main St.
Pineville, LA 71360
Counsel for Defendant/Appellant:**
   **Roy Hebron, Mayor**

**Brian D. Cespiva
Gravel & Cespiva
P. O. Box 1792
Alexandria, LA 71309-1792
Counsel for Defendant/Appellant:**
   **Town of Ball**

---

[1] Honorable Chris J. Roy, Sr. participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Larry B. Minton**
**Attorney at Law**
**P. O. Drawer 13320**
**Alexandria, LA 71315-3320**
**Counsel for Plaintiffs/Appellees:**
     **Randy Stanford, et al.**

**PICKETT, J.**

## APPEAL

The defendant, the Town of Ball (hereinafter Ball), appeals a judgment of the trial court dismissing Ball's Exceptions of No Cause and No Right of Action, making the plaintiffs' Writ of Mandamus peremptory, and ordering Ball to pay to the plaintiffs, Randy Stanford, and his children: Sunny Stanford, Randy Stanford, II, and Patience Stanford; Laetitia Callahan, Randy's fiancé; and Candy Stanford, $91,110.55 plus costs. This amount represents the damages awarded to the plaintiffs by this court in *Stanford v. Town of Ball*, 05-38 (La.App. 3 Cir. 6/1/05), 903 So.2d 1235, *writs denied*, 05-1684 (La. 1/9/06), 918 So.2d 1053, and 05-1709 (La. 1/9/06), 918 So.2d 1057, plus interest until March 15, 2006, the date Risk Management, Inc. sent a check to Ball to cover plaintiffs' claim. When Ball failed to forward the $91,110.55 to the plaintiffs, the plaintiffs filed a Writ of Mandamus seeking to enforce the judgment. The trial court found in favor of the plaintiffs, ruling that the current case does not represent "a situation where a municipality must appropriate money from its general or special funds to pay a claim." Ball appeals arguing that under the controlling law and jurisprudence, it cannot be forced to pay the plaintiffs' claim. The plaintiffs answered the appeal seeking damages for frivolous appeal. We affirm the judgment of the trial court, and we decline to award damages for a frivolous appeal.

## LAW AND DISCUSSION

The only issue raised on appeal is a legal one: did the trial court err in overruling Ball's Exceptions of No Cause and No Right of Action and in making the plaintiffs' Writ of Mandamus peremptory, and ordering Ball to pay to the plaintiffs

1

the $91,110.55 which the plaintiffs were due as a result of this court's action in *Stanford*, 903 So.2d 1235.

The enforcement of money judgments against the state or any of its political subdivisions has been addressed numerous times by the courts of this state. The most recent discussion of this issue was earlier this year by our supreme court in the case of *Newman Marchive Partnership, Inc. v. City of Shreveport*, 07-1890 (La. 4/8/08), 979 So.2d 1262. In *Newman*, the court explained as follows:

> This case requires us to interpret Louisiana constitutional articles and statutes relative to the enforcement of money judgments against a political subdivision of the state. Because the proper interpretation of a statute is necessarily a question of law, we apply a de novo standard of review. *See Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 2006-0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045.

> We begin our analysis by referring in part to the framework of our state government. Article II, section 1 of the Louisiana Constitution establishes three distinct branches of government: legislative, executive, and judicial. Section 2 of that article provides: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. art. II, § 2. Thus, "[t]his trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power which the legislative and executive branches cannot abridge." *Hoag v. State*, 2004-0857, p. 4 (La.12/1/04), 889 So.2d 1019, 1022. Similarly, the judicial branch may not usurp those powers which are vested in the other two branches. *Id.*

> The separation of powers is not always defined precisely, however. *See id.* at p. 8, 889 So.2d at 1024 ("Admittedly, there is some inevitable overlap of the functions"). Evidencing this is the clause at the beginning of article II, section 2—"Except as otherwise provided by this constitution"—a clause which establishes that the constitution in a separate provision may have one branch encroaching on another.

> The constitution allocates the judiciary some power over the other branches through article XII, section 10(A), where it waives the State's immunity in suits in contract and tort. *See Jones v. City of Baton Rouge*, 388 So.2d 737, 740 (La.1980). Thus, the judicial branch is empowered to render judgments against the state. *Hoag*, 2004-0857, pp. 4-5, 889 So.2d at 1022. However, the constitution does not provide the judiciary

2

with the ability to execute those judgments. The constitution reserves that power to the legislature:

> [The legislature] shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, *but no public property or public funds shall be subject to seizure.* The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. *No judgment against* the state, a state agency, or *a political subdivision shall be exigible, payable or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.*

La. Const. art. XII, § 10(C) (emphasis added). The legislature largely parroted this language when it enacted LSA-R.S. 13:5109(B)(2):

> *Any judgment rendered in any suit filed against* the state, a state agency, or *a political subdivision*, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit *shall be exigible, payable, and paid only* out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or *out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.*

(emphasis added).

Admittedly, article XII creates a frustrating dichotomy for the state's judgment creditors. As one commentator remarked, "the apparent liberality of abolishing most immunity from suit was offset by the continuation of a severe limitation on a private citizen's ability to enforce a judgment against the state, a state agency, or a local governmental entity." Lee Hargrave, *"Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 La. L.Rev. 647, 653 (1983). Still, the combined effect of article XII, section 10(C) and LSA-R.S. § 13:5109(B)(2) is clear. Judgments against a political subdivision of the State may only be paid "out of funds appropriated for that purpose by the named political subdivision," LSA-R.S. 13:5109(B)(2); *Hoag*, 2004-0857, p. 5, 889 So.2d at 1023, and under no circumstance shall "public property or public funds ... be subject to seizure," La. Const. art. XII, § 10(C).

In *Hoag v. State*, we noted that Louisiana courts have repeatedly held that judgment creditors cannot compel political subdivisions to appropriate funds for the payment of a judgment rendered against that

3

subdivision through a writ of mandamus. 2004-0857, pp. 5-6, 889 So.2d at 1023 (*citing Jones v. Traylor*, 94-2520 (La.App. 4 Cir. 8/23/95), 660 So.2d 933; *Landry v. City of Erath*, 628 So.2d 1178 (La.App. 3 Cir.1993); *Dep't of Transp. & Dev. v. Sugarland Ventures, Inc.*, 476 So.2d 970 (La.App. 1 Cir.1985); *Fontenot v. State*, 358 So.2d 981 (La.App. 1 Cir.1978), *rev'd on other grounds*, 355 So.2d 1324 (La.1978)). The *Hoag* court observed that mandamus "is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief," and that "the only circumstances under which courts may cause a writ of mandamus to issue is where the actions sought to be performed by the legislature are purely ministerial in nature." *Id.* at p. 6, 889 So.2d at 1023 (*citing* La.Code Civ. Proc. art. 3863 et seq.). We further stated that a "ministerial duty" is one in which "no element of discretion is left to the public officer," in other words, "a simple, definite duty, *arising under conditions admitted or proved to exist, and imposed by law.*" *Id.* at p. 7, 889 So.2d at 1024 *(citing Franklin v. Massachusetts*, 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *Felix v. St. Paul Fire & Marine Ins. Co.*, 477 So.2d 676, 682 (La.1985); further citations omitted).

*Newman*, 979 So.2d at 1265-66 (underlining and last italics ours; footnote omitted).

Upon first examination *Newman* would appear to indicate that the trial court erred and its judgment should be reversed. However, upon closer examination, we find this not to be the case. We find that *in this case, under the circumstances herein,* the trial court's judgment is correct.

It is clear that a writ of mandamus cannot be used to compel a public entity to appropriate *public funds* to pay a judgment rendered against it. However, that is not the situation in this case. Ball was sued by the plaintiffs for damages they sustained because of several back-ups of the Ball sewer system. The trial court found in favor of the plaintiffs and in November 2004 entered judgment in their favor for more than $150,000.00; Ball appealed.

On appeal, this court amended the judgment of the trial court, reducing the amount of damages the trial court had awarded. The judgment of this court was rendered on June 1, 2005. The supreme court denied writs on January 9, 2006, and

4

the judgment of this court became final. On January 17, 2006, the Board of Aldermen of the Town of Ball passed a resolution prohibiting Ball from paying the judgment.

Ball is insured against liability for damages such as those sustained by the plaintiffs by the Louisiana Municipal Risk Management Agency (LMRMA). Risk Management, Inc. (RMI) is the administrator of claims for LMRMA. After the judgment against Ball became final, LMRMA/RMI (hereinafter referred to jointly as RMI), wishing to minimize its loss by cutting off the interest due on the judgment, forwarded to Ball a check for $91,110.55, dated March 15, 2006, representing the total due the plaintiffs at that time. The mayor of Ball executed the release which accompanied the check (attached hereto as an appendix) on March 17, 2006.

The release executed by the mayor, on behalf of Ball, states the $91,110.55 check tendered represents all claims for damages "involving Randy Stanford, et al, as may be more fully set forth in the pleadings in Civil Suit No. 178,690-F [the case at issue] on the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana." (See appendix.) The release goes on to state:

> Appearer further declares that this release is given by them after mature deliberation, without any threat, duress, or intimidation toward them by any of the parties herein released or by any other person or persons and in consideration of the foregoing payment, the parties released are truly, finally, and completely and forever discharged from any and all claims which Appearer may have against any such person arising out of a claim for damages resulting from the aforementioned incident, involving Randy Stanford, et al in Civil Suit No. 178,690-F, on the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, occurring on, prior to, or after April 3, 1994.

When the Ball Town Council passed its resolution in January 2006 prohibiting the payment of the judgment in the instant suit, the town had not yet received any money from RMI and any payment to the plaintiffs would have, by necessity had to have been appropriated from public funds. These were the only funds available at

5

that time. Once Ball received the check from RMI which was for satisfaction of the judgment rendered in the Stanford case, there was no need to appropriate public funds as RMI had tendered the funds necessary to pay the judgment. Ball acknowledged the purpose of the funds in the release executed by the mayor on the town's behalf on March 17, 2006.

Thus, we find that upon execution of the release the funds received from RMI were dedicated to pay the judgment of this court; there was no discretion involved. What was involved was a "ministerial duty," one in which no element of discretion was left to the mayor or the town. Under the terms of the release, Ball had a simple, definite duty, arising under conditions to which it admitted and agreed when it signed the release and accepted the check from RMI. The funds from RMI were tendered to Ball *only* to pay the damages resulting from the incidents involving Randy Stanford, et al, as set forth in the pleadings in Civil Suit No. 178,690-F on the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, which occurred prior to, on, or about April 3, 1994.

The plaintiffs answered Ball's appeal seeking damages for frivolous appeal.

> La.Code Civ.P. art. 2164 provides that an appellate court may award damages for frivolous appeal. However, damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, that serious legal questions are not raised, or that the attorney does not seriously believe in the position he advocates. *Robinson v. Thornton*, 96-1329 (La.App. 3 Cir. 10/29/97); 705 So.2d 745, *writ denied*, 97-2963 (La.2/6/98); 709 So.2d 739.

*Cooks v. Rodenbeck*, 97-1389, p.9 (La.App. 3 Cir. 4/29/98), 711 So.2d 444, 449. Considering law and jurisprudence concerning the issue at bar, we find no basis for the award of damages for frivolous appeal.

6

Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. The plaintiffs' request for damages for frivolous appeal are denied. All costs of this appeal are assessed against the Town of Ball.

**AFFIRMED.**

## APPENDIX

## CIVIL SUIT 178,690-F

**RANDY STANFORD, ET AL**  **NINTH JUDICIAL DISTRICT COURT**

**VERSUS**  **PARISH OF RAPIDES**

**TOWN OF BALL**  **STATE OF LOUISIANA**

### RECEIPT, RELEASE AND SATISFACTION

**STATE OF LOUISIANA**

**PARISH OF RAPIDES**

BEFORE ME, the undersigned Notary Public, in and for the Parish and State aforesaid, and in the presence of the undersigned competent witnesses, personally came and appeared the TOWN OF BALL, through its duly elected Mayor, and authorized representative, Roy Hebron, (hereinafter sometimes referred to as "Appearer") who after being first duly sworn, did depose and state:

That for and in consideration of the payment to the TOWN OF BALL of the sum of NINETY-ONE THOUSAND ONE HUNDRED TEN AND 55/100 ($91,110.55) DOLLARS, by and on behalf of RISK MANAGEMENT, INC. ("RMI"), and the LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY ("LMRMA"), cash in hand paid, the receipt of which is hereby acknowledged,

7

Appearer does, hereby release, acquit, forever discharge and covenant to hold harmless, RISK MANAGEMENT, INC. ("RMI"), and the LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY ("LMRMA"), their principals, agents, employees and insureds, and all of their attorneys including Randall B. Keiser, D. Heath Trahan, Jimmy D. Long, Jr., L.L.C., Keiser Law Firm, P.L.C., Stacy C. Auzenne, and Auzenne Law Firm, L.L.C., and all other persons, of and from any and all actions, causes of action, claims, demands, damages, interest, costs, penalties, attorneys fees, punitive and/or exemplary damages, loss of services, society and consortium, lost wages, loss of earning capacity, property damages and expenses, including all medical expenses compensation, uninsured/underinsured motorist benefits, including "EM medical payments", or any and all other benefits under any self-insuring agreement issued by LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY ('LMRMA"), including but not limited to self-insuring agreement LMRMA-159, and survival action claims and claims for wrongful death, claims arising under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or the Employee Retirement Security Act ("ERISA"), worker's compensation claims or benefits, and for any other liability or charges or sums of money for which the undersigned have now or which may hereinafter accrue on account of or arising out of any and all known or unknown, past, present or future, foreseen or unforeseen, asserted or unasserted, injuries or damages and the consequences thereof, resulting from, or to result from any incident involving Randy Stanford, et al, as maybe more fully set forth in the pleadings in Civil Suit No. 178,690-F on the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, which occurred on, prior to, or about April 3, 1994, in Rapides Parish,

8

Louisiana which incident(s) is/are more fully described in the pleadings filed in the above referenced matter, or which may arise in the future.

Appearer further declares that it is understood and agreed that these payments to them are solely for the purpose of an amicable compromise and are in no way deemed an admission of liability on the part of the parties hereby released and that this payment to them is for the purpose of satisfying any and all obligations due and owing the TOWN OF BALL by the LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY ("LMRMA") an/or RISK MANAGEMENT, INC. ("RMI").

Appearer hereby declares that they understand that this payment to them is in full and final satisfaction of all obligations due and owing by the LOUISIANA MUNICIPAL RISK MANAGEMENT, INC. ("LMRMA") and/or RISK MANAGEMENT, INC. ("RMI") to Appearer, and with receipt of this payment, any and all obligations of the LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY ("LMRMA") and/or RISK MANAGEMENT, INC. ("RMI") are hereby satisfied and terminated.

Appearer further declares that this release is given by them after mature deliberation, without any threat, duress, or intimidation toward them by any of the parties herein released or by any other person or persons and in consideration of the foregoing payment, the parties released are truly, finally, and completely and forever discharged from any and all claims which Appearer may have against any such person arising out of a claim for damages resulting from the aforementioned incident, involving Randy Stanford, et al in Civil Suit No. 178,690-F, on the docket of the

9

Ninth Judicial District Court, Rapides Parish, Louisiana, occurring on, prior to, or after April 3, 1994.

Appearer fully declares, warrants and certifies under penalty of perjury that he is fully competent, and able to enter into this Receipt, Release and Satisfaction, and that he is not currently, and has never been interdicted.

Appearer further declares that it has read the above and foregoing Receipt and Release and Satisfaction, and knows the contents thereof, signs the same of their own free will, and warrants that the authorized representative of the TOWN OF BALL has the capacity and authority to sign same for and on behalf of the TOWN OF BALL.

This Receipt, Release and Satisfaction is contractual in nature and not a mere recital.

THUS DONE AND SIGNED IN ___BALL___, Louisiana on this _17_ day of __MARCH__ 2006, after due reading of the whole.

WITNESSES:                          AUTHORIZED   REPRESENTATIVE   OF
                                    THE TOWN OF BALL:

/s/   Brenda Kimball                /s/    Mayor Roy Hebron
                                    Roy Hebron as its duly elected Mayor and
                                    authorized representative of the Town of
                                    Ball.
/s/    Dianne Mecalis

                    /s/ Willie H. Bishop
                    NOTARY PUBLIC
            Bar Roll or Notary ID Number: 38290

My Commission expires at death.